```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Amado de Jesus MORENO; Nelda Yolanda REYES;
Jose CANTARERO ARGUETA; Haydee AVILEZ
ROJAS,
                    Plaintiffs,                                        MEMORANDUM AND ORDER
        - against -                                                       18-CV-1135 (RRM)

Kirstjen NIELSEN, Secretary, U.S. Department of
Homeland Security, in her official capacity; U.S.
DEPARTMENT OF HOMELAND SECURITY; L.
Francis CISSNA, Director, U.S. Citizenship and
Immigration Services, in his official capacity; U.S.
CITIZENSHIP AND IMMIGRATION SERVICES,

                    Defendants.
------------------------------------------------------------------X
```
ROSLYNN R. MAUSKOPF, United States District Judge.

By notice of motion filed on January 24, 2019, plaintiff Amado de Jesus Moreno ("Moreno") moves for a temporary restraining order ("TRO") or, in the alternative, a preliminary injunction, directing Defendants to reopen and re-adjudicate Moreno's application for adjustment of status prior to March 30, 2019, the date on which Jersey Lynne Farms Inc. – Moreno's current employer and the entity which successfully petitioned for an immigration visa on his behalf – will cease operations. Since the motion was filed during a lapse in appropriations, Defendants requested a stay of Moreno's motion or, in the alterative, entry of a briefing schedule under which their opposition papers would be served on February 13, 2019, and Moreno's reply would be served on February 18, 2019. (Letter to Hon. Roslynn R. Mauskopf from AUSA Joseph A. Marutollo, dated Jan. 23, 2019 (Doc. 47)). Defendants withdrew their stay application on January 29, 2019 – shortly after the lapse in appropriations ended. (Letter to Hon. Roslynn R. Mauskopf from AUSA Joseph A. Marutollo, dated Jan. 29, 2019 (Doc. 50)). Defendants have now responded to Moreno's motion. (Doc. No. 51).

For the reasons set forth below, the Court denies Moreno's request for a TRO. The Court directs Moreno to address in his reply papers the issue discussed in section II.B, below, of whether he has standing to challenge the policy set forth in volume 7, part B, chapter 2(A)(5) of the USCIS Policy Manual – the only policy specifically mentioned in the amended complaint. In addition, the Court extends Moreno's time to file said reply papers to February 22, 2019, and grants Defendants leave to file a sur-reply with respect to the standing issue by February 28, 2019.

## I.     Background

### A.     Facts Concerning Moreno

The following facts are not in dispute.[1] In 2000, Moreno, a citizen of El Salvador, entered the United States without inspection. (Declaration of Amado de Jesus Moreno (Doc. No. 49-5), attached as Ex. YY to the Sixth Declaration of Trina Realmuto in Support of Moreno's Motion for a TRO, ¶ 4). On March 9, 2001, El Salvador was designated for Temporary Protected Status ("TPS"). *See* https://www.uscis.gov/humanitarian/ temporary-protected-status/temporary-protected-status-designated-country-el-salvador. Moreno applied for, and was granted, TPS later that year and has maintained that status ever since. (Second Declaration of Amado de Jesus Moreno ("Second Moreno Dec.") (Doc. No. 46-1), ¶ 4).

In 2011, Moreno applied for and was granted advance parole so that he could travel to El Salvador. (*Id.*, ¶ 5). He returned to the United States on July 26, 2011, and was inspected and paroled into the United States as a TPS Holder. (*Id.*).

---

[1] While the following facts are drawn from Moreno's submissions, most are substantiated by documentary evidence submitted in support of Plaintiffs' other motions. Those facts which are not substantiated by documentary evidence are essentially identical to those set forth in the Local Rule 56.1 Statement of Undisputed Material Facts (Doc. No. 29-1), which Plaintiffs filed with their motion for summary judgment. Since Defendants did not file a Rule 56.1 counterstatement, these facts are deemed admitted. *See* Local Civil Rule 56.1(c).

On or about January 30, 2013, Moreno's employer, Jersey Lynne Farms Inc., filed an immigrant visa petition on Moreno's behalf with U.S. Citizenship and Immigration Services ("USCIS"). (Notice Approving Application for Immigrant Visa (Doc. 29-7), attached as Ex. GG to Fourth Declaration of Trina Realmuto in Support of Plaintiffs' Motion for Summary Judgment ("Fourth Realmuto Dec.")). USCIS granted that petition on November 13, 2014, making Moreno eligible for an immigrant visa as a "skilled worker" under § 203(b)(3)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1153(b)(3)(A)(i). In January 2015, Moreno filed an application to adjust his status to that of a lawful permanent resident. (Second Moreno Dec., ¶ 7).

Moreno's application for adjustment of status was denied on April 7, 2017. (USCIS Decision (Doc. No. 29-8), attached as Ex. HH to Fourth Realmuto Dec.). USCIS ruled that Moreno was ineligible for adjustment of status because he had failed to maintain lawful immigration from the time of his first entry into the United States. (*Id.*).[2] Moreno then filed a request to reopen this decision, arguing that because he had been paroled into the United States in 2011, he satisfied § 1255(k)'s requirements and was exempt from the unlawful presence bar to adjustment found in 8 U.S.C. § 1255(c). (*See* USCIS Decision dated Jul. 14, 2017 (Doc. No. 32-27), attached as Ex. X to Third Declaration of Trina Realmuto in Support of Plaintiffs' Amended Motion for Class Certification).

In a decision dated July 14, 2017, USCIS denied Moreno's request to reopen, ruling: "Reentry into the United States based on an advanced parole is not considered an admission into the United States." (*Id.*, p. 2). The USCIS reasoned that because Moreno "initially entered the

---

[2] Although the USCIS Decision states that Moreno did not "meet the requirements of INA § 245(a)," 8 U.S.C. § 1255(a), that ruling was actually based on 8 U.S.C. § 1255(c)(2), which makes an applicant ineligible for adjustment of status under § 1255(a) if he or she "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States."

3

United States without inspection," he was not eligible for the exemption set forth in INA § 245(k), 8 U.S.C. § 1255(k). (*Id.*).

**B.     This Action**

On February 22, 2018, Moreno and three other individuals – Nelda Yolanda Reyes, Jose Cantarero Argueta, and Haydee Avilez Rojas – commenced this class action against the U.S. Department of Homeland Security ("DHS"); DHS Secretary Kirstjen Nielsen; USCIS; and USCIS Director Francis Cissna.  As amended, Plaintiffs' pleading alleges that pursuant to "a policy of refusing to find that a grant of TPS constitutes an 'inspection and admission' for purposes of adjustment of status," USCIS denies applications for adjustment of status filed by "current TPS holders who were not 'inspected and admitted' other than through the grant of TPS." (Am. Compl., (Doc. No. 12), ¶ 81; *see also* ¶¶ 89, 98).  The amended complaint specifically identifies that "policy" as a portion of volume 7, part B, chapter 2(A)(5) of the USCIS Policy Manual, which provides, in part: "A foreign national who enters the United States without inspection and subsequently is granted temporary protected status (TPS) does not meet the inspected and admitted or inspected and paroled requirement."  (Am. Compl., ¶ 62).

This policy is consistent with the holding in S*errano v. U.S. Atty. Gen.*, 655 F.3d 1260 (11th Cir. 2011), but inconsistent with the holding in other cases, including *Flores v. U.S. Citizenship & Immigration Servs.*, 718 F.3d 548 (6th Cir. 2013), and *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017), which hold that the plain language of 8 U.S.C. § 1254a(f)(4) requires that TPS holders be deemed "inspected and admitted" for purposes of adjustment of status under 8 U.S.C. § 1255(a).  The USCIS Policy Manual cites to *Flores* in a footnote acknowledging that a different policy applies in the Sixth Circuit:

> The 6th Circuit Court of Appeals has ruled that TPS status meets
> the inspected and admitted requirement for adjustment of status

> under INA 245 [8 U.S.C. § 1255] even if a foreign national granted
> TPS status entered the United States without inspection. *See Flores
> v. USCIS*, 718 F.3d 548 (6th Cir. 2013). This decision is only
> binding on cases within the jurisdiction of the 6th Circuit:
> Kentucky, Michigan, Ohio, and Tennessee.

USCIS Policy Manual, vol. 7, pt. B, ch. 2(A)(5) n.56. It does not mention *Ramirez* because volume 7 of the USCIS Policy Manual became effective in February 2016, before the Ninth's Circuit's 2017 decision in *Ramirez*.

In their amended complaint, Plaintiffs assert that *Flores* and *Ramirez* were correctly decided, stating: "Defendants properly apply 8 U.S.C. §§ 1254a(f)(4) and 1255(a) when, by 'consider[ing]' a TPS holder 'as being in, and maintaining, lawful status as a nonimmigrant' pursuant to 8 U.S.C. § 1255a(f)(4), they find that the grant of TPS satisfies the 'inspected and admitted' requirement of 8 U.S.C. § 1255(a)." (Am. Compl., ¶ 80). Plaintiffs seek to compel USCIS to abandon its reliance on *Serrano* and to adopt a policy consistent with *Flores* and *Ramirez*. Specifically, Plaintiffs seek an order declaring 1) "that Defendants' policy of refusing to find that a grant of TPS constitutes an 'inspection and admission' for purposes of adjustment of status and all adjustment decisions issued based upon that policy are contrary to 8 U.S.C. § 1254a(f)(4)," and 2) "that all Plaintiffs and proposed class members have been 'inspected and admitted' for purposes of 8 U.S.C. § 1255(a) pursuant to their grant of TPS." (Am. Compl., p. 24). Plaintiffs also request injunctive relief: a prohibitory injunction directing "Defendants to immediately cease applying their policy that a grant of TPS does not constitute an 'inspection and admission' for purposes of 8 U.S.C. § 1254a(f)(4)," and a mandatory injunction directing "Defendants to find that, pursuant to 8 U.S.C. § 1254a(f)(4), Plaintiffs and proposed class members were 'inspected and admitted' for purposes of their adjustment of status applications." (*Id.*).

5

## C. The Instant Motion for Injunctive Relief

On January 24, 2019, Moreno filed a motion for a temporary restraining order or, in the alternative, a preliminary injunction. In his motion, Moreno states that Jersey Lynne Farms – the employer that successfully petitioned for an immigrant visa on Moreno's behalf – is ceasing operations on March 30, 2019. Moreno represents that he will no longer be eligible for adjustment of status when he loses his job and will have to begin the lengthy, multi-step process of applying for an immigrant visa all over again. He claims that "even if he were fortunate enough to be hired by … an employer" willing to sponsor him for an immigrant visa, "the multi-step immigration process takes years, as illustrated by his past experience, which took nine years from the first step (filing the Labor Certification application with [the Department of Labor]) until USCIS' denial of his adjustment application in 2017." (Memorandum of Law in Support of Moreno's Motion for a TRO ("Moreno's Memo") (Doc. No. 49-1), p. 8). Accordingly, Moreno seeks a mandatory injunction directing defendants to "[r]eopen and re-adjudicate … [his] application for adjustment of status prior to March 30, 2019." (Proposed Order granting Moreno's Motion for a TRO ("Proposed Order") (Doc. No. 49-9), p. 2).

With respect to the re-adjudication, Moreno seeks mandatory injunctive relief that differs from the relief requested in the amended complaint. Moreno requests an order directing defendants to:

> a) treat [him] as being in lawful nonimmigrant status for purposes of adjustment of status under 8 U.S.C. § 1255;
> b) treat [him] as having been "inspected and admitted" for the purposes of adjustment of status under all of 8 U.S.C. § 1255; [and]
> c) find that [his] grant of Temporary Protected Status satisfies the "lawful admission" requirement of 8 U.S.C. § 1255(k).

(*Id.*, pp. 2–3).

In their response to Moreno's motion, Defendants point out that USCIS' approval of Moreno's petition for an immigrant visa will not "be revoked solely because the petitioning employer went out of business …." (Defendants' Memorandum of Law in Opposition to Moreno's Motion for a TRO ("Defendants' Opposition") (Doc. No. 51), p. 12). They argue that if Moreno obtains a "new offer of employment from a different U.S. employer in the same or similar occupational classification as his employment with Jersey Lynne Farms" and his application for adjustment of status is reopened, his new employer will not need to re-commence the process of petitioning for an immigrant visa. (*Id.*) Rather, Moreno will only have to file an additional document: Supplement J to Form I-485. (*See id.*).

## II. Discussion

### A. Injunctive Relief

"The standard for an entry of a TRO is essentially the same as for a preliminary injunction." *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)). "A party seeking a … TRO … or a preliminary injunction must demonstrate: (1) irreparable harm; (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor; and (3) that a preliminary injunction is in the public interest." *Residents & Families United to Save Our Adult Homes v. Zucker*, No. 16-CV-1683 (NGG) (RER), 2017 WL 3446805, at *1 (E.D.N.Y. Aug. 10, 2017) (citing *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). However, the Second Circuit has "held the movant to a heightened standard where: (i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the

7

merits.'" *N.Y. ex rel. Schneiderman*, 787 F.3d at 650 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)). "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits, *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999), and make a 'strong showing' of irreparable harm, *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981), in addition to showing that the preliminary injunction is in the public interest." *Id.*

Although the standards for granting a TRO and a preliminary injunction are essentially the same, a TRO "serves a purpose different from that of a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009). "The purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Id.* (quoting *Pan Am. World Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir. 1962)). In accordance with this purpose, Rule 65(b)(2) of the Federal Rules of Civil Procedure sets restrictions on how long a TRO can remain in effect. "A TRO cannot exceed fourteen days unless the district court, 'for good cause,' extends it for another period of no more than fourteen days." *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 132 n.2 (2d Cir. 2014) (citing Fed. R. Civ. P. 65(b)(2)). Moreover, "a TRO lasting longer than twenty-eight days requires that the adverse party consent …." *Id.*

In this case, Moreno's request for preliminary injunctive relief is premised on the belief that the USCIS' approval of his immigrant visa petition will be automatically rescinded when Jersey Lynne Farms ceases to operate. This fear is unfounded. The immigration regulations specifically provide that "[i]f a petitioning employer's business terminates 180 days or more after petition approval, or 180 days or more after an associated adjustment of status application

8

has been filed, the petition remains approved unless its approval is revoked on other grounds." 8 C.F.R. § 205.1(a)(3)(iii)(D). Jersey Lynne Farms will cease operations on March 30, 2019 – more than five years after Jersey Lynne Farms' petition for an immigrant visa on Moreno's behalf was approved and Moreno filed his application to adjust his immigration status. Accordingly, the USCIS should not revoke its approval of Moreno's immigrant visa petition just because Jersey Lynne Farms ceases operations.

To be sure, Moreno will have to obtain a valid offer of employment before the date, if ever, that his application for adjustment of status is reopened. The immigration regulations provide:

> An alien who has a pending application to adjust status to that of a lawful permanent resident based on an approved employment-based immigrant visa petition filed under section 204(a)(1)(F) of the [INA] on the applicant's behalf must have a valid offer of employment based on a valid petition at the time the application to adjust status is filed and at the time the alien's application to adjust status is adjudicated, and the applicant must intend to accept such offer of employment.

8 C.F.R. § 245.25. Defendants represent that after March 30, 2019, Moreno will still be eligible for adjustment of status if he obtains a new offer of employment "in the same or a similar occupational classification" as the job for which the petition was filed and files an additional document – Supplement J to Form I-485 – to establish his new offer of employment. (Defendants' Opposition, p. 12). Of note, Moreno does not claim that he will be unable to obtain a new offer of employment which meets these criteria.

While the Court will not rule on the preliminary injunction motion until the motion is fully briefed, there is clearly no valid basis for a TRO at this juncture. As noted above, a TRO serves only to maintain the status quo, *Garcia*, 561 F.3d at 107, and cannot last for more than 28 days without the consent of the party against whom the TRO is sought. *U.S. D.I.D. Corp.*, 775

F.3d at 132 n.2. Even if Moreno were to become ineligible for adjustment of status on March 30, 2019, it would be futile to grant a TRO at this juncture since a TRO issued today would expire before March 30, 2019.

### B. Standing

In his reply, in addition to addressing the issues raised in the body of Defendants' Opposition, Moreno must also address a standing issue suggested by footnote 2 on page 13 of Defendants' Opposition. The Court reads the amended complaint as challenging only that policy set forth in volume 7, part B, chapter 2(A)(5) of the USCIS Policy Manual, which provides: "A foreign national who enters the United States without inspection and subsequently is granted temporary protected status (TPS) does not meet the inspected and admitted or inspected and paroled requirement." As Plaintiffs note, that policy is consistent with *Serrano*, 655 F.3d 1260, but inconsistent with *Ramirez*, 852 F.3d 954, and *Flores*, 718 F.3d 548, both of which "held that 8 U.S.C. § 1254a(f)(4) unambiguously requires that TPS holders are deemed 'inspected and admitted' for purposes of adjustment of status under 8 U.S.C. § 1255(a)." (Am. Compl., ¶ 59). Plaintiffs opine that *Ramirez* and *Flores* were correctly decided, stating: "Defendants properly apply 8 U.S.C. §§ 1254a(f)(4) and 1255(a) when, by 'consider[ing]' a TPS holder 'as being in, and maintaining, lawful status as a nonimmigrant' pursuant to 8 U.S.C. § 1255a(f)(4), they find that the grant of TPS satisfies the 'inspected and admitted' requirement of 8 U.S.C. § 1255(a)." (Am. Compl., ¶ 80).

Plaintiffs are seeking declaratory and injunctive relief that would force USCIS to extend the benefit of *Ramirez* and *Flores* to TPS holders nationwide (except in the Eleventh Circuit). Plaintiffs' amended complaint specifically alleges:

> USCIS has a written policy rejecting the plain language of the statute, as interpreted by the Sixth and Ninth Circuits …. In that

10

> policy, USCIS declares that "[a] foreign national who enters the
> United States without inspection and subsequently is granted
> temporary protected status (TPS) does not meet the inspected and
> admitted or inspected and paroled requirement."

(*Id*., ¶ 62 (quoting USCIS Policy Manual, vol. 7, part B, ch. 2(A)(5))). The pleading alleges that, "[a]s a direct consequence of Defendant's policy, the applications of all Plaintiffs and proposed class members who otherwise qualify for adjustment of status have been or will be denied by Defendant USCIS." (*Id*., ¶ 63).

Although the three causes of action in the amended complaint do not cite to USCIS Policy Manual, Vol. 7, Part B, Ch. 2(A)(5), the allegations appear to reference this policy. Count One alleges that "Defendants have a policy of refusing to find that a grant of TPS constitutes an 'inspection and admission' for purposes of adjustment of status and, pursuant to this policy, deny adjustment applications of current TPS holders who were not 'inspected and admitted' other than through the grant of TPS," which policy applies to all TPS holders residing outside the Sixth and Ninth Circuits. (Am. Compl., ¶ 81). This same "policy" is alleged in nearly identical terms in the two other causes of action, which seek mandamus relief under 5 U.S.C. § 706(1) and 28 U.S.C. § 1361. (*See id*., ¶¶ 89, 98).

However, Defendants' Opposition concedes that Moreno, having been paroled into the United States following his trip in 2011, meets the "inspected and admitted or paroled requirement" of § 1255(a). (Defendants' Opposition, p. 13 n.2). Defendants point out that Moreno was denied adjustment of status under § 1255(c), which provides, in pertinent part, that § 1255(a) "shall not be applicable to … (2) subject to subsection (k), an alien … who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." Subsection (k) provides, in relevant part:

> An alien who is eligible to receive an immigrant visa under paragraph … (3) of section 1153(b) of this title … may adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2) … if –
>
> (1) the alien, on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission.

Defendants contend that Moreno did not qualify for the § 1255(k) exemption because he was paroled, rather than "lawfully admitted," into the United States following the overseas trip he took in 2011 after being granted TPS.

Although Defendants' Opposition does not question Moreno's standing, these facts suggest that Moreno may not have standing to challenge the policy set forth in volume 7, part B, chapter 2(a)(5) of the USCIS Policy Manual. "To establish standing under Article III of the Constitution, a plaintiff must allege '(1) *injury-in-fact*, which is a concrete and particularized harm to a legally protected interest; (2) *causation* in the form of a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief.'" *Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 110 (2d Cir. 2018) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008)) (emphasis in *W.R. Huff Asset Mgmt. Co., LLC*). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). "Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Peck v. Baldwinsville Cent. Sch. Dist.,* 351 F. App'x. 477, 479 (2d Cir. 2009) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco*, 433 F.3d 181, 198 (2d Cir. 2005)).

The undisputed facts in this case suggest that Moreno may be unable to establish causation or redressability. Since Moreno was not denied adjustment of status based on the policy challenged in the amended complaint, causation appears to be lacking. Indeed, a different part of volume 7, part B, chapter 2(A)(5) of the USCIS Policy Manual expressly provides that TPS holders like Moreno, who traveled abroad after being granted TPS status and were paroled back into the United States, meet the "inspected and admitted or inspected and paroled" requirement.[3]

In addition, Moreno may be unable to establish redressability because the relief requested in the amended complaint would not redress Moreno's injury. USCIS never expressly considered the question of whether Moreno met the "inspected and admitted or paroled" requirement of § 1255(a) because it found that he was ineligible for adjustment of status under that subsection. Accordingly, an order declaring Moreno had been "'inspected and admitted' for purposes of 8 U.S.C. § 1255(a) pursuant to [his] … grant of TPS," (Am. Compl., p. 24), or an injunction directing USCIS to so find, would not affect USCIS's decision. Similarly, an order declaring "that Defendants' policy of refusing to find that a grant of TPS constitutes an 'inspection and admission' for purposes of adjustment of status and all adjustment decisions

---

[3] The last two paragraphs of that policy state:

> If a foreign national under TPS departs the United States and is admitted or paroled upon return to a port of entry, the foreign national meets the inspected and admitted or inspected and paroled requirement provided the inspection and parole occurred before he or she filed an adjustment application. The applicant, however, must still meet all other requirements to be eligible for adjustment.
>
> DHS has authority to admit rather than parole TPS beneficiaries who travel and return with TPS-related advance parole documents. For purposes of adjustment eligibility, it does not matter whether the TPS beneficiary was admitted or paroled. In either situation, once the foreign national is inspected at a port of entry and permitted to enter to the United States, the foreign national meets the inspected and admitted or inspected and paroled requirement.

issued based upon that policy are contrary to 8 U.S.C. § 1254a(f)(4)," (Am. Compl., p. 24), and enjoining that policy, would be superfluous since, under other portions of volume 7, part B, chapter 2(A)(5) of the USCIS Policy Manual, Moreno met the "inspected and admitted or inspected and paroled requirement" by virtue of having been inspected and paroled into the United States following his 2011 trip.

Indeed, the Court notes that the relief Moreno is requesting in the instant motion is subtly different from the injunctive relief requested in the amended complaint. Moreno now requests a mandatory injunction directing that USCIS "treat … Moreno has having been 'inspected and admitted' for the purposes of adjustment of status under all of 8 U.S.C. § 1255," and "find that … Moreno's grant of Temporary Protected Status satisfies the 'lawful admission' requirement of 8 U.S.C. § 1255(k)." (Proposed Order, p. 3). This change in the injunctive relief requested suggests that Moreno himself recognizes that the injunctive relief sought in the amended complaint would be insufficient to redress his claims.

### III. Conclusion and Order

For the reasons set forth above, it is ORDERED:

1. Moreno's request for a temporary restraining order is denied.
2. Moreno's reply papers shall address the standing issue raised in section II.B, above. His time to reply is extended from February 18, 2019, to February 22, 2019.
3. Defendants are granted leave to file a sur-reply, which shall address only the standing issue. That sur-reply, if any, shall be filed on or before February 28, 2019.

SO ORDERED.

Dated: Brooklyn, New York
      February 15, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge