UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AMADO DE JESUS MORENO; NELDA YOLANDA
REYES; JOSE CANTARERO ARGUETA;
HAYDEE AVILEZ ROJAS,

                                      Plaintiffs,                    **MEMORANDUM AND ORDER**

             - against -                                        18-CV-1135 (RRM)

KIRSTJEN NIELSEN, Secretary, U.S. Department of
Homeland Security, in her official capacity; U.S.
DEPARTMENT OF HOMELAND SECURITY;
L. FRANCIS CISSNA, Director, U.S. Citizenship and
Immigration Services, in his official capacity; U.S.
CITIZENSHIP AND IMMIGRATION SERVICES,

                                      Defendants.
-------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, Chief United States District Judge.

       Plaintiffs Amado de Jesus Moreno, Nelda Yolanda Reyes, Jose Cantarero Argueta, and Haydee Avilez Rojas (collectively, "Plaintiffs") bring this putative class action against the United States Department of Homeland Security ("DHS"), the DHS Secretary, the United States Customs and Immigration Service ("USCIS"), and the Director of USCIS (collectively, "Defendants"), alleging that their applications to adjust from Temporary Protected Status ("TPS") to Lawful Permanent Residents ("LPR") status were improperly denied pursuant to an unlawful USCIS policy of refusing to find that a grant of TPS constitutes an "inspection and admission" for purposes of adjustment of status.  Plaintiffs now move for a preliminary injunction directing Defendants to re-open and re-adjudicate their adjustment applications without applying that allegedly unlawful policy.  For the reasons set forth below, Plaintiffs' motion is denied.

## BACKGROUND

The following facts are not in dispute.  Plaintiffs are foreign nationals who entered the United States without inspection sometime before their native countries – El Salvador in the case of plaintiff Moreno and Honduras in the case of the other three plaintiffs – were designated for TPS.  After their countries were so designated, plaintiffs applied for, and were granted, TPS.

At some point after gaining TPS, all four plaintiffs applied for adjustment of status under 8 U.S.C. § 1255.  Subsection (a) of this section provides:

> The status of an alien who was inspected and admitted or paroled into the United States … may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

However, subsection (c) makes certain aliens ineligible for adjustment of status under subsection (a).  As relevant here, subsection (c) provides:

> [S]ubsection (a) shall not be applicable to … (2) subject to subsection (k), an alien (other than an immediate relative as defined in section 1151(b) of this title or a special immigrant described in section 1101(a)(27)(H), (I), (J), or (K) of this title) who hereafter continues in or accepts unauthorized employment prior to filing an application for adjustment of status or who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States ….

Subsection (k) makes the provisions of subsection (c)(2) inapplicable to "certain employment-based immigrants."  Specifically, it provides, in pertinent part:

> An alien who is eligible to receive an immigrant visa under paragraph (1), (2), or (3) of [8 U.S.C.] section 1153(b) … may

2

>> adjust status pursuant to subsection (a) and notwithstanding subsection (c)(2) … if —
>
> (1) the alien, on the date of filing an application for adjustment of status, is present in the United States pursuant to a lawful admission ….

Aliens who are eligible to receive an immigrant visa under § 1153(b)(3) include "skilled workers" and other workers "who are capable, at the time of petitioning for classification under this paragraph, of performing unskilled labor, not of a temporary or seasonal nature, for which qualified workers are not available in the United States."

All four plaintiffs had their applications denied. The USCIS ruled that Moreno and Cantarero Argueta, both of whom had obtained immigrant visas under §1153(b)(3), were ineligible for adjustment of status under § 1255(c)(2) because they had failed to maintain continuously a lawful status since entry into the United States. Moreno had been in the country illegally from the time of his entry in 2000 until he was granted TPS status in 2001, (*see* Am. Compl. (Doc. No. 12) ¶ 25), and Cantarero Argueta had "failed to maintain a lawful status between April 7, 1997[,] when [he] entered the United States without inspection and April 11, 2000, when [he was] granted TPS." (Notice of Intent to Deny (attached to Third Declaration of Trina Realmuto in Support of Plaintiff's Amended Motion for Class Certification as Ex. Z) (Doc. No. 32-29).) The USCIS ruled that Moreno and Cantarero Argueta – both of whom traveled abroad after being granted TPS and were then paroled back into the United States (Am. Compl., ¶¶ 21, 36) – were not eligible for the exception set forth in § 1255(k) because they were not present in the United States pursuant to a "lawful admission" on the date they filed for adjustment of status. With respect to Moreno, the USCIS ruled: "Reentry into the United States based on an advanced parole is not considered an admission into the United States." (USCIS Decision dated July 14, 2017 (attached to Third Declaration of Trina Realmuto in Support of

3

Plaintiffs' Amended Motion for Class Certification as Ex. X) (Doc. No. 32-27).)  Similarly, the USCIS sent Cantarero Argueta a "Notice of Intent to Deny" which stated that being paroled into the country was "not an admission, and without an admission he [was] not eligible for a waiver of the bar to adjustment for unlawful presence under § 1255(k)."  (Am. Compl., ¶ 39.)

Reyes' application appears to have been rejected on different grounds:  because she could not adduce evidence that she had been "inspected and admitted or paroled," as required by § 1255(a).  After Reyes applied for adjustment of status, USCIS sent Reyes a Request for Information, demanding evidence that she had been admitted or paroled into the United States.  (Am. Compl., ¶ 31.)  Reyes' attorney responded by arguing "that her grant of TPS constituted an inspection and admission for purposes of adjustment, in accord with the plain language of 8 U.S.C. § 1254a(f)(4)."  (*Id.*)  The USCIS implicitly rejected that argument in its Notice of Decision, ruling that Reyes had failed to adduce the evidence necessary to establish her eligibility for adjustment of status.  (*Id.*)

While Plaintiffs have provided a declaration in which Avilez Rojas states that her application for adjustment of status was denied on or about June 7, 2018, (Declaration of Haydee Avilez Rojas (Doc. No. 41-4) at ¶ 5), the basis for that denial is unclear.  The amended complaint, which was filed on March 26, 2018 – more than two months before the USCIS denied her application – merely speculates that it would "be denied based on USCIS' policy of not treating a grant of TPS as an inspection and admission for purposes of adjustment."  (Am. Compl., ¶ 44.)  However, Avilez Rojas's declaration does not allege the basis for the denial.

<u>This Action</u>

On February 22, 2018, Plaintiffs commenced this putative class action against DHS; USCIS; then DHS Secretary Kirstjen Nielsen and then USCIS Director L. Francis Cissna – both

4

of whom were sued in their official capacities. Approximately one month later, Plaintiffs filed an amended complaint, which principally alleges that pursuant to "a policy of refusing to find that a grant of TPS constitutes an 'inspection and admission' for purposes of adjustment of status," USCIS denies applications for adjustment of status filed by "current TPS holders who were not 'inspected and admitted' other than through the grant of TPS." (Am. Compl., ¶ 81; see also ¶¶ 89, 98.) That policy is set forth in volume 7, part B, chapter 2(A)(5) of the USCIS Policy Manual, and provides, in part: "A foreign national who enters the United States without inspection and subsequently is granted temporary protected status (TPS) does not meet the inspected and admitted or inspected and paroled requirement." Plaintiffs allege that this policy is contrary to 8 U.S.C. § 1254a(f)(4), which states that "[d]uring a period in which an alien is granted temporary protected status under this section – for purposes of adjustment of status under section 1255 of this title … , the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant."

In support of this contention, Plaintiffs point to two cases – *Flores v. U.S. Citizenship & Immigration Servs.*, 718 F.3d 548 (6th Cir. 2013), and *Ramirez v. Brown*, 852 F.3d 954 (9th Cir. 2017) – which hold that the plain language of 8 U.S.C. § 1254a(f)(4) requires that TPS holders be deemed "inspected and admitted" for purposes of adjustment of status under 8 U.S.C. § 1255(a). However, Plaintiffs also acknowledge that there is authority to the contrary, noting that "the Eleventh Circuit held the opposite" in *Serrano v. U.S. Att'y Gen.*, 655 F.3d 1260 (11th Cir. 2011) (per curiam). In their amended complaint, Plaintiffs principally allege that *Flores* and *Ramirez* were correctly decided, stating: "Defendants properly apply 8 U.S.C. §§ 1254a(f)(4) and 1255(a) when, by 'consider[ing]' a TPS holder 'as being in, and maintaining, lawful status as a

5

nonimmigrant' pursuant to 8 U.S.C. § 1255a(f)(4), they find that the grant of TPS satisfies the 'inspected and admitted' requirement of 8 U.S.C. § 1255(a)." (Am. Compl., ¶ 80).

In this action, Plaintiffs seek to compel USCIS to abandon its reliance on *Serrano* and to adopt a policy consistent with *Flores* and *Ramirez*. Specifically, Plaintiffs seek an order declaring 1) "that Defendants' policy of refusing to find that a grant of TPS constitutes an 'inspection and admission' for purposes of adjustment of status and all adjustment decisions issued based upon that policy are contrary to 8 U.S.C. § 1254a(f)(4)," and 2) "that all Plaintiffs and proposed class members have been 'inspected and admitted' for purposes of 8 U.S.C. § 1255(a) pursuant to their grant of TPS." (Am. Compl., p. 24.) Plaintiffs also request injunctive relief: a prohibitory injunction directing "Defendants to immediately cease applying their policy that a grant of TPS does not constitute an 'inspection and admission' for purposes of 8 U.S.C. § 1254a(f)(4)," and a mandatory injunction directing "Defendants to find that, pursuant to 8 U.S.C. § 1254a(f)(4), Plaintiffs and proposed class members were 'inspected and admitted' for purposes of their adjustment of status applications." (*Id.*)

<u>The Instant Motion for Preliminary Injunctive Relief</u>

Plaintiffs now move for "a preliminary injunction requiring Defendants to properly apply the law with respect to their LPR applications." (Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction ("Plaintiffs' Memo") (Doc. No. 41-1) at 1.) Specifically, Plaintiffs seek an order 1) directing Defendants to re-open and re-adjudicate their adjustment of status applications and 2) enjoining Defendants from applying the policy of refusing to a) treat TPS holders as being in lawful immigration status and b) consider TPS holders as being inspected and admitted for the purposes of adjustment of status under 8 U.S.C. §1255.

(Plaintiffs' Proposed Order (Doc. No. 41-7) at 2.) Plaintiffs' motion for a preliminary injunction essentially seeks the mandatory injunction requested in their amended complaint.

Plaintiffs argue that without a preliminary injunction they will suffer irreparable harm in two respects. First, plaintiffs argue that they "are suffering and will continue to suffer irreparable harm in the absence of a preliminary injunction given their loss of the opportunity to stabilize their status." (Plaintiff's Memo at 2.) Plaintiffs note that persons with LPR status are not only "afforded the opportunity to permanently reside and work in the United States," but are eligible to apply for citizenship after five years (three for spouses of U.S. citizens such as plaintiff Alivez Rojas). (*Id.* at 15.) Citing to *Kirwa v. U.S. Dep't of Defense*, 285 F. Supp. 3d 21 (D.D.C. 2017); *Vargas v. Meese*, 682 F. Supp. 591 (D.D.C. 1987); and two other district court cases, Plaintiffs argue that "[c]ourts have recognized that delaying the ability to apply for citizenship constitutes irreparable harm." (Plaintiffs' Memo at 15.)

Second, Plaintiffs argue that they face the "imminent loss" of their TPS unless they are granted injunctive relief. (*Id.* at 2.) Plaintiffs note that the loss of TPS could result in deportation, which would cause Plaintiffs to be separated from friends and family in the United States. It would also result in a loss of work authorizations, which would result in a "loss of income and the ability to provide for themselves and their family members." (*Id.*) In the case of plaintiff Avilez Rojas, a retiree, loss of TPS would cause her to lose her Social Security benefits. (*Id.* at 19.)

Plaintiffs acknowledge that a district court in the Ninth Circuit has enjoined Defendants from terminating TPS for citizens of El Salvador. (*Id.* at 1.) However, Plaintiffs note that this injunction does not cover citizens of Honduras and that Defendants are appealing that decision.

7

(*Id.* at 1, 16–17.) They speculate that they may not have time to reapply for adjustment of status if the Ninth Circuit reverses the lower court. (*Id.* at 16–17.)

## STANDARD OF REVIEW

"A party seeking a preliminary injunction must ordinarily establish (1) 'irreparable harm'; (2) 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party'; and (3) 'that a preliminary injunction is in the public interest.'" *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)). However, the Second Circuit has "held the movant to a heightened standard where: (i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" *Id.* (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995)). "When either condition is met, the movant must show a 'clear' or 'substantial' likelihood of success on the merits, *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999), and make a 'strong showing' of irreparable harm, *Doe v. N.Y. Univ.*, 666 F.2d 761, 773 (2d Cir. 1981), in addition to showing that the preliminary injunction is in the public interest." *Id.*

"Irreparable harm 'is the single most important prerequisite' for injunctive relief, and 'in the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.'" *Uppal v. New York State Dep't of Health*, 756 F. App'x 95, 96 (2d Cir. 2019) (summary order) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)). "Irreparable harm is defined as 'certain and imminent harm for which a monetary award does not adequately compensate.'" *Allstate Ins. Co. v. Harvey Family Chiropractic*, 677 F.

8

App'x 716, 718 (2d Cir. 2017) (summary order) (quoting *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003)).  In order "[t]o satisfy the irreparable harm requirement, [p]laintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).

## DISCUSSION

In this case, Plaintiffs are not only seeking a mandatory injunction, but are seeking injunctive relief that will provide them "with substantially all the relief sought" in this case and that "cannot be undone" even if Defendants ultimately prevail on the merits.  *New York ex rel. Schneiderman*, 787 F.3d at 650; *Tom Doherty Assocs.*, 60 F.3d at 33–34.  The injunctive relief Plaintiffs seek would require USCIS to reconsider their applications for adjustment of status and to apply policies that would result in granting those applications.  To obtain this injunctive relief, Plaintiffs must make a "'strong showing' of irreparable harm." *New York ex rel. Schneiderman*, 787 F.3d at 650 (quoting *Doe v. N.Y. Univ.*, 666 F.2d at 773).  They have failed to make this showing.

First, as Plaintiffs themselves acknowledge in their motion for a preliminary injunction, United States District Judge Edward M. Chen of the North District of California has already entered a preliminary injunction enjoining Defendants "from engaging in, committing, or performing, directly or indirectly, by any means whatsoever, implementation and/or enforcement of the decisions to terminate TPS for Sudan, Haiti, El Salvador, and Nicaragua pending resolution" of that case on the merits.  *Ramos v. Nielsen*, 336 F. Supp. 3d 1075, 1108 (N.D. Cal.

9

2018). Judge Chen also ordered Defendants to take "all steps needed to ensure the continued validity of documents that prove lawful status and employment authorization" for these TPS holders "pending completion of discovery and a ruling on the merits of the action." *Id.* at 1108–09. Although the *Ramos* defendants have appealed Judge Chen's ruling, that appeal remains pending before the Ninth Circuit.

While Plaintiffs' Memo correctly notes that Judge Chen's ruling did not prohibit the termination of TPS for Honduras, the scope of the injunction has been expanded by recent developments. First, in March 2019, the DHS Secretary entered into a stipulation in another district court case – *Bhattarai v. Nielsen* – ensuring that Honduran TPS holders will retain their TPS while the preliminary injunction in *Ramos* remains in effect, provided that the alien's TPS is not withdrawn because of individual ineligibility. *Bhattarai v. Nielsen*, No. 19-cv-00731 (N.D. Cal. Mar. 12, 2019). That stipulation was reflected in a notice published by the DHS in the Federal Register on November 4, 2019, which stated: "Beneficiaries under the Temporary Protected Status (TPS) designations for El Salvador, Honduras, Nepal, Nicaragua, and Sudan will retain their TPS while the preliminary injunction in *Ramos* remains in effect, provided that an alien's TPS is not withdrawn because of individual ineligibility." Continuation of Documentation for Beneficiaries of Temporary Protected Status Designations for El Salvador, Haiti, Honduras, Nepal, Nicaragua, and Sudan, 84 Fed. Reg. 59,403, 59,403, 2019 WL 5683994 (Nov. 4, 2019).

That same Federal Register notice also provided assurances that TPS would not be terminated precipitously regardless of the outcome of the appeal in *Ramos*. Specifically, it provided:

> Should the Government prevail in its challenge to the *Ramos* preliminary injunction, the Secretary's determination to terminate

10

> TPS for Honduras, Nepal, Nicaragua, and Sudan will take effect no earlier than 120 days from the issuance of any appellate mandate to the district court. The Secretary's determination to terminate TPS for El Salvador will take effect no earlier than 365 days from the issuance of any appellate mandate to the *Ramos* district court.

*Id.* at 59,405. DHS also announced that it was "automatically extending the validity of TPS-related documentation for beneficiaries under the TPS designations for El Salvador, Haiti, Honduras, Nepal, Nicaragua, and Sudan … through January 4, 2021." *Id.* at 59,403. That documentation included certain Employment Authorization Documents (EADs), which permitted the TPS holders to work legally in the United States.

In light of this Federal Register notice, the argument that Plaintiffs face the "imminent loss" of their TPS and EADs unless they are granted injunctive relief is unpersuasive. The Ninth Circuit has yet to issue a ruling on the Government's appeal, and Plaintiffs have offered no analysis to suggest that the Court of Appeals is likely to overturn Judge Chen's decision. Moreover, even if the Ninth Circuit were to reverse and vacate the injunction, Plaintiffs would not be subject to immediate loss of their TPS and TPS-related benefits. Plaintiff Moreno's status and benefits would continue for at least a year, and the other three plaintiffs' status and benefits would continue for at least 120 days, from the date on which the Ninth Circuit issues its mandate. During that period, Plaintiffs could renew their request for injunctive relief and would not be at risk of deportation. Moreover, regardless of what the Ninth Circuit does, Plaintiff are authorized to continue working until, at a minimum, January 4, 2021. Accordingly, Plaintiffs have not established that they are in imminent danger of being deported or deprived of their ability to earn a living.

Plaintiffs also assert that, absent injunctive relief, they will be delayed in their ability to apply for citizenship and that this delay alone is sufficient to establish irreparable harm. That

assertion is not supported by the four cases they cite. Plaintiffs principally rely on *Kirwa v. United States Dep't of Def.*, 285 F. Supp. 3d 21 (D.D.C. 2017), a case brought by non-citizens service members who enlisted in the Army Reserve under the United States Department of Defense's Military Accessions Vital to the National Interest ("MAVNI") program. The DOD initially "represented to plaintiffs that, in exchange for 8 years of military service, they would be able to pursue an expedited path to citizenship shortly after enlistment" but subsequently withheld a certificate that plaintiffs needed in order to file their applications, making it impossible for them to pursue citizenship for "two or three years." *Id.* at 43. Principally relying on a line of cases holding that "delaying naturalization applications after applicants have been promised an expedited path to citizenship constitutes irreparable harm," *id.* at 42 (citing cases), the district court held that the DOD's refusal to promptly provide the certificates constituted irreparable harm.

One of the cases cited by *Kirwa* is *Vargas v. Meese*, 682 F. Supp. 591, 595 (D.D.C. 1987), another of the cases on which Plaintiffs rely. In *Vargas*, the plaintiffs were Mexican agricultural workers who had entered the United States before early July 1987 on temporary H-2 or H-2A visas to work on a harvest that was expected to end in October 1987. By statute, holders of such visas were "eligible to apply for a change of status and to be accorded … rights and benefits includ[ing] employment authorization and immunity from deportation or exclusion, pending the adjudication of their … applications." *Id.* at 591. However, "[o]n July 31, 1987, without notice or comment, defendants published an amendment to the regulations" which provided that those aliens who entered the United States on June 26, 1987, or thereafter could file their applications "only at foreign processing offices having jurisdiction over their place of foreign residence." *Id.* at 593–94. In an opinion dated October 5, 1987, the district court

12

enjoined the Government from refusing to accept applications from plaintiffs while they were still in the United States, stating, among other things: "[A]ccording to the plain language of the statute, applicants may file for a change of status in the United States. That statutory right to file will be mooted if their applications are not accepted in this country." *Id.* at 595.

In both *Kirwa* and *Vargas*, the failure to grant injunctive relief would not have merely delayed the path to citizenship but would have denied plaintiffs the time-sensitive rights to which they were entitled. The only way to enforce the promise that the *Kirwa* plaintiffs would "be able to pursue an expedited path to citizenship shortly after enlistment" was to grant injunctive relief ordering the Government to provide the certificates needed to apply for citizenship immediately, not at the conclusion of the litigation. Similarly, the only way to give effect to the statutory provision allegedly violated by the new regulation in *Vargas* was an injunction forcing the Government to accept the agricultural workers' applications before their visas expired at the end of the harvest. In contrast, the denial of injunctive relief in this case will not eviscerate some time-sensitive right.

The other two district court cases cited by Plaintiffs do not involve preliminary injunctive relief and are factually distinguishable. In *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018), District Judge Analisa Torres held that denying a stay of removal "would result in irreparable injury" to the petitioner in that case and to other parties interested in the proceeding. *Id.* at 468. While acknowledging that "removal is 'not categorically irreparable,'" *id.* (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)), Judge Torres held that that petitioner had "demonstrated irreparable injury in this specific case" by adducing proof that his detainment and threat of deportation was causing his wife to "show[ ] symptoms of severe depression and anxiety." *Id.* The judge found that the petitioner's removal might "perpetuate grave emotional

13

and psychological harm to his wife and children by splitting apart their family, perhaps forever," and that "this factor weigh[ed] in favor of a stay of removal and release." However, this fact-specific holding, which was expressly limited to that case, has no implications for this case.

The other case cited by Plaintiffs – *Al Karim v. Holder*, No. 08-CV-671 (REB), 2010 WL 1254840, (D. Colo. Mar. 29, 2010) – is even more inapposite. That opinion does not relate to a motion for preliminary injunctive relief, but rather a motion for summary judgment brought by a plaintiff whose application for adjustment of status had not been decided for six years. The district court in that case noted that the "indefinite nature of the delay in adjudicating [Al Karim's] application" had "real and not insubstantial effects on [his] life and livelihood, including limitations on his ability to travel, potential negative consequences on his legal status as a refugee, and the financial and bureaucratic burdens of regularly filing travel and work applications." However, *Al Karim* did not hold or imply that the delay constituted "irreparable harm" for purpose of a motion for injunctive relief. Even if it did, this case would be distinguishable because Defendants promptly adjudicated Plaintiff's applications, rather than delaying decision indefinitely.

As Plaintiffs correctly note, Defendants' rejection of their applications for adjustment of status has cost Plaintiffs "the opportunity to stabilize their status" at this juncture. The Court does not doubt that this instability is worrisome and unsettling to Plaintiffs. However, this psychic harm arising from the loss of the "abilit[y] to plan for the future and make commitments, whether familial, career-based, academic, or otherwise" is not irreparable harm and not a basis for injunctive relief. *Batalla Vidal v. Nielsen*, 279 F. Supp. 3d 401, 434 (E.D.N.Y. 2018).

Because Plaintiffs have failed to make a "strong showing" of irreparable harm, their motion for a preliminary injunction is denied. *See Uppal*, 756 F. App'x at 96; *Rodriguez ex rel.*

14

*Rodriguez*, 175 F.3d at 234.  Accordingly, the Court need not determine whether Plaintiffs have shown a clear or substantial likelihood of success on the merits, or whether the preliminary injunction is in the public interest.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.

Dated: Brooklyn, New York
        May 18, 2020

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
Chief United States District Judge